**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| Chris Ann JAYE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 17-5257 (RBK/KMW) |
| v. | : | |
| | : | **OPINION** |
| Federal Judge Michael SHIPP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

Plaintiff Chris Ann Jaye brings, for the fourth time in federal court, a sprawling lawsuit alleging a vast conspiracy among members of the federal and New Jersey judiciaries, governments, private companies, and their employees, premised on legal actions taken against her years ago. Today, the Court considers the motions to dismiss of Brown, Moskowitz & Kallen and Steve Rowland (ECF No. 14); Knuckles, Komosinsky & Manfro, and Haley Pope, Selene Finance LLC, and Wilmington Savings Fund Society (ECF No. 22); Rutter & Roy and Williams Transcontinental Gas Pipeline (ECF No. 25); Margolis Edelstein (ECF No. 26); Mary Melfi (ECF No. 33); Allied World Insurance Company (ECF No. 36); Erick Spronck and Robert A. Stephenson (ECF No. 54); Kenneth Sauter and Hill Wallack (ECF No. 58); and John Hoffman, Judith Irizzari, Christopher Koos, Christopher Porrino, Brian Wilson, Ione Curva, and Caroline Record (ECF No. 73). Defendant Steve Rowland has also moved for an order for Plaintiff to show cause that she should not be subject to a filing injunction. (ECF No. 35.)

Plaintiff, for her part, has submitted several motions for summary judgment. (ECF Nos. 66, 81, 82, 93.) Plaintiff has also sought to bar Steve Rowland from filing documents in the district court. (ECF No. 114.)

1

As Plaintiff's complaint appears to be an attempt at relitigating issues that have already been decided, sometimes numerous times, and is otherwise replete with unfounded and conclusory allegations, all the Defendants' motions and Rowland's request for an order to show cause are **GRANTED** and Plaintiff's motions for summary judgment and to enjoin Rowland from future filings are **DENIED**.

## I. THE FACTS

### A. Past Litigation

This case arises from a condominium dispute that has since developed into a sprawling case involving dozens of people. Plaintiff is, or at least was, a condominium unit owner with the Oak Knoll Village Condominium Association (the "OK Owners Association"), an entity including among its membership defendants Robert Stephenson and Erick Spronck. *See Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, No. 15-8324, 2016 WL 7013468, at *3 (D.N.J. Nov. 30, 2016).[1] In March 2012, Plaintiff brought numerous claims against the OK Owners Association in the Superior Court of New Jersey, bringing claims for harassment, intentional infliction of emotional distress, breach of fiduciary duty, contempt, and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. *See id.*

Plaintiff's initial complaint rested, at least in part, on a belief that the OK Owners Association had discriminated against her in an effort to expel her from the community; they had allegedly labeled her "delusional" and a "conspiracy theorist." 2016 WL 7013468, at *2. The OK Owners Association, for its part, maintained that Plaintiff had been delinquent in paying various condominium fees to them, and filed a counterclaim seeking $6,529.92 in damages. *Id.* The court

---

[1] We take the facts concerning Plaintiff's past litigation in state court from this opinion by Judge Shipp.

2

granted summary judgment on this counterclaim. *Id.* In two subsequent suits brought by the OK Owners Association in 2014 and 2015, both dealing with the same delinquency issues, judgment was entered against Plaintiff for $8,448 and 11,812.58, respectively. *Id.* Although not at all apparent from the face of Plaintiff's complaint, the New Jersey Appellate Division summarized the gestalt of her dispute on its review:

> [Jaye] is, and at all relevant times was, a unit owner at Oak Knoll Village [OKV], a condominium community. [Jaye] failed to pay her common element expenses. As a result of the delinquency in those expenses, OKV instituted legal action seeking a judgment against appellant for the outstanding amount. Prior to the entry of judgment, a settlement was reached between the parties whereby in exchange for a "zero-out" of the claimed balance owed by appellant to OKV, [Jaye] would commence payment of the common element charges. Notwithstanding the agreement, [Jaye] ceased payments after a few months. Thereafter, OKV instituted another action by way of counterclaim seeking judgment for unpaid common element expenses and counsel fees. OKV filed a motion for summary judgment which appellant opposed on grounds other than OKV's entitlement to the outstanding fees and costs. The judge, after providing [Jaye] with the opportunity to contest the quantum of fees and costs sought by OKV, granted the motion.

*Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, No. A-4856-12T2, 2014 WL 7691938 (N.J. Super. Ct. App. Div. Jan. 28, 2015). The Appellate Division affirmed. It also noted that "appellant raises several arguments on appeal which are without sufficient merit to warrant discussion in a written opinion." 2014 WL 7691938, at *2.

Plaintiff's apparent failure to pay condominium fees has since expanded into an allegation of a massive conspiracy among members of the state and federal judiciaries, legal entities of the State of New Jersey, and several private parties and court personnel. Tracking the precise nature of the many proceedings in which Plaintiff has been involved is beyond the scope of this opinion, but we begin with what appears to be her first lawsuit against a judge. In October 2013, Plaintiff brought suit against the Honorable Yolanda Ciccone, alleging constitutional violations arising from Judge Ciccone's rulings in a state court litigation rejecting Plaintiff's claims. The trial court

dismissed the case on grounds of judicial immunity, Plaintiff appealed, and the Appellate Division affirmed. *See generally Jaye v. Ciccone*, No. A-3817-13T2, 2016 WL 731927, at *1 (N.J. Super. Ct. App. Div. Feb. 25, 2016). Plaintiff eventually sued the appellate judges on this panel.

Plaintiff next sued several state government agencies, alleging that the New Jersey Attorney General; a Deputy Attorney General; several members of the New Jersey judiciary who had presided over proceedings involving her, including Judge Ciccone; and state court personnel were in league against her. *See Jaye v. Hoffman*, No. CIV.A. 14-7471 JAP, 2015 WL 540315, at *3 (D.N.J. Feb. 10, 2015) (Pisano, J.). Judge Pisano first heard the matter at the district court level, but it was later assigned to Judge Sheridan. (Order, *Jaye v. Hoffman*, 14-7471 (D.N.J. Dec. 21, 2015), ECF No. 14.) Plaintiff sued Judge Sheridan, and subsequently moved to recuse him; the motion was granted. (Order at 1, *Jaye v. Hoffman*, 14-7471 (D.N.J. July 23, 2015), ECF No. 25.) Thereafter, the case was assigned to Judge Shipp, who dismissed Plaintiff's second amended complaint with prejudice for failure to state a claim. (Op. at 2, *Jaye v. Hoffman*, 14-7471 (D.N.J. Dec. 21, 2015), ECF No. 64.) The Third Circuit later affirmed dismissal of this case, noting that, *inter alia*, Judge Shipp's denial of Plaintiff's "Motion to Vacate" was proper, for Plaintiff "essentially sought to relitigate issues the District Court had already decided." *See Jaye v. Attorney Gen. New Jersey*, 706 F. App'x 781, 784 (3d Cir. 2017). The United States Supreme Court denied certiorari on appeal. *Jaye v. Porrino*, 138 S. Ct. 927 (2018).

During the pendency of these appeals, yet another case, mentioned above and dealing with the same factual predicate and many of the same defendants—indeed, many of *this* case's defendants—was also dismissed with prejudice by Judge Shipp. *See Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, No. 15-8324, 2016 WL 7013468, at *3 (D.N.J. Nov. 30, 2016). Margolis Edelstein,

a law firm, defended 15 of the 39 defendants in this matter. Rutter & Roy, another law firm, defended Williams Transcontinental Gas Pipeline.

As a consequence of their defense work, Margolis Edelstein and Rutter & Roy, along with their clients, are now Defendants in this matter—Plaintiff alleges they have revealed their involvement in this ever-expanding conspiracy. For its part, Williams Transcontinental Gas Pipeline appears to have been sued for its operation of three natural gas pipelines crossing portions of the common elements of the Oak Knoll Village Condominium Owners' Association; why it was sued was apparently a mystery to Judge Shipp.[2] We note, furthermore, that although it is utterly unclear from the face of Plaintiff's complaint, the Court surmises that former New Jersey Attorney General Christopher S. Porrino, former New Jersey Attorney General John Hoffman, Christopher Koos, Deputy Attorney General Ione Curva, Brian Wilson, Judith Irizzari, and Caroline Record have been sued for their past representation of various state-employed clients. The Court is unable to determine what, if any, involvement Allied World Insurance Company had in this, but Plaintiff has sued it as well. Ultimately, this matter, although dismissed at the pleading stage, still managed to generate more than 383 filings as Plaintiff waged her paper blitzkrieg.

Also during this time, Plaintiff filed another suit dealing with the same allegations and an ever-growing set of defendants, which was dismissed with prejudice as to all parties save one. (Order at 2, *Jaye v. Hoffman*, 16-7771 (D.N.J. Aug. 9, 2017), ECF No. 81.) Shortly thereafter, that defendant, Mary Melfi, a Defendant in this action, was dismissed from the case on grounds of judicial immunity. (*See* Op. at 1, 16-7771, (D.N.J. March 28, 2018), ECF No. 111.)

While this maelstrom raged, Plaintiff also sued Judge Shipp, filing the instant action on July 18, 2017. (ECF No. 1.)

---

[2] As it is here, too.

5

That, then, is one line of controversy in this case; a new one began on March 4, 2016, when Defendant Wilmington Savings Fund Society commenced a foreclosure action against Plaintiff in the Superior Court of New Jersey. The foreclosure action was commenced through its mortgage loan servicer Selene Finance, LP, acting through its counsel Knuckles, Komosinsky & Manfro, LLP. Plaintiff's answer asserted numerous affirmative defenses, including fraud, lack of standing, illegality, failure to comply with the New Jersey Rules of Court, and violations of the FDCPA. Following discovery, Wilmington Savings, through its counsel, Defendant John E. Brigandi, filed a motion for summary judgment addressing each of the affirmative defenses. Plaintiff filed a cross motion. Wilmington Savings' motion was granted, and Plaintiff's was denied. *See* Order, *Wilmington Savings Fund Society v. Jaye*, No. F-6447-16 (N.J. Super. Ct. Sept. 23, 2016). Plaintiff then filed two motion for reconsideration, each denied in succession; she filed a motion to vacate default, which was also denied; she sought interlocutory appeal, which was, again, denied. After Wilmington Savings filed a motion for final judgment for entry of a final judgment of foreclosure, which was granted, Plaintiff then filed a motion to vacate that final judgment. This, too, was denied. She filed an emergent application with the New Jersey Appellate Division; this was denied. And when she filed the same with the New Jersey Supreme Court, it, too, denied review of her theory of a denial of her due process rights. Plaintiff sued all these individuals as well, as well as several judges, including Justices of the New Jersey Supreme Court.

### B. The Instant Action

This action originally named several judges, including nearly all of the ones mentioned above, as defendants, but all judicial officer defendants were dismissed. (ECF No. 8.)[3] The remaining defendants are:

1. former New Jersey Attorney General Christopher S. Porrino, New Jersey Attorney General John Hoffman, Christopher Koos, Ione Curva, Brian Wilson, Judith Irizzari, and Caroline Record (the "State Defendants");

2. Erick Spronck and Robert A. Stephenson;

3. Steve Rowland and the law firm of Brown, Moskowitz & Kallen;

4. Haley Pope, Jim Jaret, John Brigandi, Selene Finance LLC, the Wilmington Savings Fund Society, and the law firm of Knuckles, Komosinsky & Manfro (the "Wilmington Savings Defendants");

5. Allied World Insurance Company;

6. Hill Wallack and Kenneth Sauter;

7. Williams Transcontinental Gas Pipeline and the law firm of Rutter & Roy;

8. the law firm of Margolis Edelstein; and

9. Hunterdon County Clerk Mary Melfi.

Against these Defendants, Plaintiff alleges that her property "has been encumbered and slandered by acts involving the recordation of fraudulent and illegal documents by Defendant Melfi." (Compl. ¶ 47.) The remaining Defendants, relying on Melfi's alleged perfidy, "have conspired to deprive the Plaintiff" of her right to due process. (Compl. ¶ 51.) The State Defendants seized her property; various lawyers, real estate companies, a gas company, other entities, and their sundry

---

[3] The complaint named the following judicial officers: Judge Michael Shipp, Judge Peter Sheridan, Judge Michael Fisher, William Walsh, Justice Rabner, Justice Jaynee Lavecchia, Judge Peter Buchsbaum, Judge Yolanda Ciccone, Judge Mary Jacobson, Judge Patrick McManimon, Judge Accurso, Judge Manahan, Judge Haas, Judge Yannotti, Judge Hurd, Judge Marbrey, Judge Innes, and Judge Goodleitz.

employees were in on the take.[4] Several judges in the state and federal judiciaries were likewise alleged to have conspired and aided in this scheme. (Compl. ¶¶ 54-61.)

Plaintiff's allegations are conclusory, imprecise, unclear, and addressed to "Defendants" as a group, with carve-outs for individual defendants here and there. But their thrust is one of grave injustice, with counts brought under 42 U.S.C. §§ 1983, 1985 and 1986; violations of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10-6-1; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; the FDCPA; and Abuse of Process. And although it's not the exact same complaint as those submitted in previous iterations of the *Jaye* saga, the complaint leaves no doubt that it intends to challenge the exact same factual background (ongoing, of course, as this conspiracy has not yet been quashed) as those raised in *Jaye v. Hoffman*, 14-7471; *Jaye v. Oak Knoll Village Condominium Owners Association*, 15-8324, and *Jaye v. Hoffman*, 15-7771, to say nothing of the state court proceedings. But a rose by any other name is still a frivolous lawsuit.

## II.    LEGAL STANDARDS

### A. The 12(b)(1) Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject-matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). On a motion under Rule 12(b)(1), it is the plaintiff who bears the burden of establishing subject-matter jurisdiction. *Gould Elec., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). And although sovereign immunity is not strictly a matter of

---

[4] Specifically, it is alleged that the following Defendants filed false recordings and/or liens against Plaintiff: Brown, Moskowitz & Kallen; Steve Rowland; Erick P. Spronck; Robert A. Stephenson; Williams Transcontinental Gas Pipeline; Kenneth Sauter; Hill Wallack; Selene Finance; Wilmington Savings Fund Society; and Jim Jared. (Compl. ¶ 61.)

subject-matter jurisdiction, its jurisdictional qualities may be considered under a 12(b)(1) motion. *See, e.g.*, *Wilson v. New Jersey Dep't of Corr.*, 2017 WL 4618156, at *2-4 (D.N.J. Oct. 13, 2017) (citing *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008)).

A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Gould Elecs.*, 220 F.3d at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *see United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### B. The 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

We note that district courts may dismiss claims that do not state causes of action *sua sponte*. *See Bintliff-Ritchie v. American Reinsurance Company*, 285 Fed. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)"); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).

## III. DISCUSSION

### A. Immunity

#### 1. Sovereign Immunity

Although most of Plaintiff's claims against the State Defendants have already been adjudicated, it appears former Attorney General Porrino is new to this litigation, and we consider whether he is entitled to Eleventh Amendment Immunity. As with the other members of the Office of the New Jersey Attorney General, we find that he is.

Ordinarily, "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—[are] generally immune from suit by private parties in federal court" pursuant to the Eleventh Amendment. *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). The Third Circuit has adopted a three-part test to determine

when an entity is a state actor entitled to Eleventh Amendment immunity, examining (1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). In light of the *Fitchik* factors, the Office of the New Jersey Attorney General is indisputably a state actor. Defendants Christopher S. Porrino, John Hoffman, Ione Curva, and Brian Wilson are or were employed by this office at the relevant times. Furthermore, all the State Defendants appear to be sued in their official capacities for work related to the performance of their duties, and are therefore state actors for purposes of the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

We now turn to the relief sought by Plaintiff against these Defendants and whether sovereign immunity bars this Court from hearing the action. As a rule, sovereign immunity prevents federal courts from hearing suits against unconsenting states or state actors. This immunity, however, is not absolute, and is subject to three exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Hess*, 297 F.3d at 323 (citation omitted). These Defendants, all engaged in their official capacities, have not consented to suit in federal court, and immunity has not been abrogated by congressional action. To the extent Plaintiff seeks damages from these Defendants for acts done in their official capacities, this Court cannot exercise its jurisdiction over this action and Plaintiff's damages claims against Defendant Christopher S. Porrino, as well as Defendants John Hoffman, Ione Curva, and Brian Wilson, are barred.

To the extent that Plaintiff also seeks injunctive and declaratory relief or makes out a claim of individual liability against the State Defendants, we address those claims below, as they have been addressed before and are res judicata. With respect to Christopher Porrino, the Court finds that Plaintiff's complaint fails to establish that she has sued him in his individual capacity, as she has not elaborated on how he could be individually liable. Plaintiff's talismanic invocations of liability "are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679, and thus all claims against him are dismissed.

### 2. Judicial Immunity

As Christopher Koos, Judith Irizzari, and Caroline Record are judicial personnel, they are entitled to judicial immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (judges immune from suit unless they act in complete absence of jurisdiction). As the Third Circuit recently held with respect to another of Plaintiff's cases, Plaintiff has not "set forth information which might show that court personnel acted contrary to the judicial rulings against her." *See Jaye v. Attorney Gen. New Jersey*, 706 F. App'x 781, 784 (3d Cir. 2017). The claims against them are dismissed with prejudice.

### 3. The Litigation Privilege

Lawyers have absolute immunity with respect to "statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto." *Fenning v. S. G. Holding Corp.*, 47 N.J. Super. 110, 117 (App. Div. 1957). "The absolute privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995) (citation and quotation marks omitted). The privilege has been held to apply "even to

statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 588 (2006). A clear purpose of the privilege is to ensure the smooth operation of legal proceedings, unhindered by lawyerly worries that zealous advocacy could result in personal liability. Accordingly, New Jersey has applied the claim broadly, covering civil rights actions under 28 U.S.C. § 1983 as well as all manner of tort claims, including negligent infliction of emotional distress and civil conspiracy. *Loigman*, 185 N.J. at 583-84.

Plaintiff's claims against the law firms of Margolis Edelstein and Rutter & Roy, although difficult to discern, appear to be solely addressed at their defense work in a prior case—i.e., they communicated their case before a tribunal which then entered a judgment unfavorable to Plaintiff. This, apparently, makes out the basis for their participation in the conspiracy against Plaintiff. We disagree; we find the litigation privilege shields the firms from Plaintiff's civil rights claims in their entirety and those are dismissed with prejudice. To the extent Plaintiff has sued these Defendants under RICO, we address those arguments' sufficiency below, as it is unsettled whether RICO abrogates the litigation privilege. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 526 (D.N.J. 2012). Similarly, "the litigation privilege is not properly applied to an abuse of process action." *Baglini v. Lauletta*, 315 N.J. Super. 225, 230, 717 A.2d 449, 451-52 (Law. Div. 1998).

### B. Rooker-Feldman

To the extent Plaintiff is suing Defendants as a means of appealing adverse judgments in New Jersey State Courts, we find that the *Rooker-Feldman* doctrine prevents Plaintiff from doing so. The Third Circuit has held that *Rooker-Feldman* prevents a suit from going forward in federal court when (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Where a federal court's ruling "would effectively overturn the state court's determination that [a] foreclosure could proceed," a plaintiff's claims are so "inextricably intertwined with the state court's grant of summary judgment" that they must be dismissed under the *Rooker-Feldman* doctrine. *See Francis v. TD Bank, N.A.*, 2013 WL 4675398, at *4 (D.N.J. Aug. 30, 2013), *aff'd Francis v. T.D. Bank, N.A.*, 597 Fed App'x 58 (3d Cir. 2014).

In particular, Plaintiff's suit against the Wilmington Savings Defendants fully implicate the prior adjudications of the New Jersey judiciary. Plaintiff raised these issues *repeatedly* in her filings in the state court foreclosure proceedings, and again in her appeals. She lost in state court; she complains of injuries caused by the state-court judgments; these judgments were rendered before this case was filed; and she is asking this Court to effectively review and reject those judgments by finding that the claims that were adjudicated deprived her of her rights to due process. This Court cannot do that, and accordingly Plaintiff's claims against the Wilmington Savings Defendants, insofar as they challenge the state court's determinations, are dismissed with prejudice under the *Rooker-Feldman* doctrine.

### C. **Res Judicata**

"The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *Id.* Determining whether the cause of action is the same requires evaluation of, among other things, whether (a) the acts complained of and relief sought are the same; (b) the theory of recovery is the same; (c) the witnesses and documents necessary at trial are the same; and (d) the material facts are the same. *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 461-62 (1989).

Plaintiff has sued many of the Defendants before. This very Court, in *Jaye v. Hoffman*, 16-7771, adjudicated Plaintiff's claims against Mary Melfi, John Hoffman, Ione Curva, Brian Wilson, Christopher Koos, Judith Irizzari, and Caroline Record, dismissing all with prejudice. In another, earlier proceeding, *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, No. 15-8324, 2016 WL 7013468, at *3 (D.N.J. Nov. 30, 2016), Judge Shipp adjudicated Plaintiff's claims against Hill Wallack, Kenneth Sauter, Williams Transcontinental Gas Pipeline, Erick P. Spronck, Robert A. Stephenson, Steven R. Rowland, and the law firm of Brown, Moskowitz & Kallen.

All three elements of res judicata are present here with respect to these Defendants. Plaintiff's complaint, despite her averments about this being ongoing activity, addresses the exact same issues and involves many of the exact same parties and seeks the exact same remedies, namely, the removal of liens on her property and some termination of the nebulous conspiracy aimed against her. This has already been adjudicated; indeed, in many respects, as we noted with

respect to *Rooker-Feldman*, *cannot* be adjudicated by a federal court. The claims against these Defendants are therefore dismissed with prejudice.

### D. Failure to State a Claim

#### 1. Civil Rights Claims

Plaintiff conclusorily states that Defendants are liable under 28 U.S.C. §§ 1983, 1983, 1986 and the NJCRA. As we have found Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment or otherwise insufficient, the remaining Defendants against whom these civil rights claims are brought are private parties. With respect to § 1983 and the NJCRA, Plaintiff has failed to plead that any of the other Defendants are state actors, as she must to prevail on these claims, for they would have to conspire or work with state officials to be subject to these civil rights statutes. *See Gonzalez v. Auto Mall 46, Inc.*, 2012 WL 2505733, at *5 (N.J. Super. Ct. App. Div. July 2, 2012) (a defendant must be a "state actor" under the NJCRA). Her allegation of conspiracy, although cognizable under § 1983 and the NJCRA if a private party is a "willful participant in a joint activity with the State or its agents," *United States v. Price*, 383 U.S. 787, 794 (1966), is flatly insufficient here. Plaintiff has provided no facts to establish the conspiracy she alleges, let alone that they worked alongside state officials to cause her alleged constitutional deprivations. At most, she alleges the operation of the court system was fraudulent and deprived her of her rights to due process. As concern her allegations of conspiracy, we find the same deficiencies in her § 1985 and § 1986 claims.

#### 2. RICO

Plaintiff's sweeping RICO claims fail to satisfy the necessary elements of a claim under 18 U.S.C. § 1962(c). A plaintiff bringing a RICO claim must refer to "a pattern of racketeering activity," which requires a showing of two "predicate acts." 18 U.S.C. § 1961(5). Plaintiff has

made no effort to establish any of these, or indeed to provide any fact that ties *any* Defendant to the far-flung conspiracy she alleges. Plaintiff apparently believes the operation of the judicial system, and the necessity of an eventual judgment that is adverse to one or the other party, is proof enough of her claims. In this she is mistaken. Plaintiff's claims brought under RICO are merely a conclusory recitation of the elements addressed to all Defendants and flatly fail *Twombly*'s plausibility test.[5]

### 3. FDCPA

The only FDCPA claim brought by Plaintiff that is not barred by res judicata—for she could have, and did, raise this in prior litigation—is brought against the Wilmington Savings Defendants. Although Plaintiff raised these in the New Jersey foreclosure proceeding, it appears the court struck Plaintiff's affirmative defenses and did not enter a final judgment on the merits. But Plaintiff has not identified any communications from a debt collector attributable to the Wilmington Savings Defendants that could provide a basis for a lawsuit against them under the FDCPA; instead, she has conclusorily alleged their involvement in a conspiracy. Yet the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," enumerating several instances which may make out a violation of the statute. 15 U.S.C. § 1692e. Indeed, it appears that the Wilmington Savings Defendants are not even "debt collectors" within the meaning of the statute. Plaintiff has made no effort to establish any of these necessary elements, or indeed to provide any fact that could make out an FDCPA claim against the Wilmington Savings Defendants.

---

[5] We note, furthermore, that Plaintiff likewise fails to satisfy Rule 8's requirements that a pleading be "short and plain," for her complaint fails to provide sufficient notice that could indicate to Defendants the nature of the suit brought against them.

4. *Abuse of Process*

Although barred by res judicata as to some Defendants, Plaintiff brings an abuse of process action against Defendants Rutter & Roy, Emery Margolis, Allied World Insurance Company, and Williams Transcontinental Gas Pipeline. An action for abuse of process may be brought against any person making an improper, illegal and perverted use of legal procedure. *Tedards v. Auty*, 232 N.J. Super. 541, 557 A.2d 1030 (App. Div. 1989); *Ash v. Cohn*, 119 N.J.L. 54, 58, 194 A. 174 (E. & A. 1937). The Restatement (Second) of Torts, § 682 at 474 (1977) notes that the crux of an abuse of process action is the use of "a legal process . . . against another primarily to accomplish a purpose for which it is not designed." The two essential elements of abuse of process are (1) ulterior-motive and (2) some further act after issuance of process representing the perversion of the legitimate use of process. *Tedards*, 232 N.J. Super. at 550.

Plaintiff has failed to plead the essential elements of an abuse of process claim, neither stating an ulterior motive nor identifying a specific act. There are no facts in the complaint that set forth a plausible basis for this claim. Allied World Insurance Company, for example, only makes its second appearance in the complaint when Plaintiff alleges, without reference to *any* factual background, that it committed this tort against her. That is insufficient, and so Plaintiff has, as with her other claims, failed to state a claim for which relief can be granted.

### E. **Plaintiff's Motions for Summary Judgment Are Moot**

As the Court has found that all claims against all Defendants must be dismissed, Plaintiff's motions for summary judgment, although procedurally defective and mislabeled, are moot. They are accordingly denied.

## IV.     VEXATIOUS LITIGANT

Finally, Defendant Steve Rowland has asked this Court to order Plaintiff to show why she should not be enjoined from filing further lawsuits in connection to her condominium troubles. (ECF No. 35.)

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court may enter a pre-filing injunction "to preclude abusive, groundless and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). "When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process." *Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990). "Courts have uniformly sanctioned litigants who attempt to relitigate issues already decided against [them] . . ." *Dunleavy v. Gannon*, 2012 WL 259382 (D.N.J. Jan. 26, 2012) (citing *Napier v. Thirty or More unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080 (3d Cir. 1988).

However, "the District Court should not restrict a litigant from filing claims absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Farrelly*, 994 F.2d at 1037. Moreover, "[i]f the circumstances warrant the imposition of an injunction, the District Court must give notice to the litigant to show cause why the proposed injunctive relief should not issue." *Id.* Finally, "the scope of the injunctive order must be narrowly tailored to fit the particular circumstances of the case before the District Court." *Id.*

We agree that Plaintiff's serial complaints in federal court—by our count, there are at least four[6]—and voluminous filings make out a preliminary showing of abuse of the judicial system.

---

[6] Specifically, and as referenced above, *Jaye v. Hoffman*, 14-7471; *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, No. 15-8324; *Jaye v. Hoffman*, 16-7771; and this matter, *Jaye v. Shipp*, 17-5257.

Plaintiff's repeated attempts to create a new controversy by suing a presiding judge, or by attempting to make an appellate issue out of long-settled law, or by reigniting an old controversy by wantonly disregarding past judgments, appear to this Court to be vexatious and, indeed, repetitive. Plaintiff is not entitled to convert the judicial system into a means for harassment. If she wants for a hobby, the filing of lawsuits will not do.

As a result, Plaintiff will be required to show cause within twenty days of the order accompanying this opinion why her pattern of conduct, which has caused the expenditure of countless resources, judicial and otherwise, does not justify a tailored pre-filing injunction that provides as follows:

1. Without prior leave of this Court, Plaintiff Chris Ann Jaye should be prohibited, when proceeding pro se, from filing any lawsuits against any of the Defendants or others not yet named relating to disputes concerning the payment of her condominium fees or foreclosure proceedings, or any perceived conspiracies emanating out of them;

2. Leave of Court will be freely granted upon Plaintiff showing through a properly filed petition that a specific proposed filing (i) can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure and (ii) is not barred by principles of claim or issue preclusion;

3. Plaintiff must attach a copy of the pre-filing injunction to any subsequent pro se lawsuit that relates to the payment of her condominium fees or foreclosure proceedings; and

4. The injunction shall not apply to the filing of timely notices of appeal of any decision rendered by this Court in this action, nor shall it apply to the cases that Jaye has already filed.

As for Plaintiff's request to enjoin Rowland from submitting filings concerning her case, it is denied.

## V. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss are **GRANTED** and Plaintiff's motions for summary judgment and motion to restrain Rowland from filing are **DENIED**. Furthermore, Defendant Rowland's request for an order for Plaintiff to show cause is **GRANTED**. An order follows.


Dated:     March 29, 2018                                    s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge